**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

GEORGE E. JACOBS,

              PLAINTIFF,

     V.

A.C. QUINONES, et al.,

             DEFENDANTS

Case No.: 1:10-cv-02349-AWI-JLT (PC)

**FINDINGS AND ORDERS DISMISSING CERTAIN CLAIMS AND DEFENDANTS**

**ORDER GRANTING SERVICE OF THE FIRST AMENDED COMPLAINT**

(Doc. 11).

      Plaintiff George E. Jacobs IV ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  On October 3, 2011, Plaintiff filed his First Amended Complaint "FAC".  Plaintiff's FAC asserts claims against the following individuals at Corcoran State Prison ("CSP"): Lieutenant A.C. Quinones; Captain R. Davis; Sergeants D. Scaiffe and S. Sztukowski; Correctional Officers Huff, Meza, Bravo, T.J. Williams, Silva, Gonzalves, Haywood, Foley, T. Cogdill, G. Bardonnex and M. Magana; Medical Technician Pruitt; Appeals Coordinator L. Cano; Warden Derral G. Adams; third watch Sergeant John Doe 1 ("Doe 1"); second watch sergeant John Doe 2 ("Doe 2"); and Medical Technician Assistant Jane Doe 3 ("Doe 3") (collectively "Defendants").   The Court now screens Plaintiff's First Amended Complaint.

///

**I. Screening Requirement**

The Court is required to screen any complaint filed by a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity" in order to identify any "cognizable claim." 28 U.S.C. § 1915A(a)-(b). The Court should dismiss the case if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or if the prisoner is "seek[ing] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). A Court should dismiss a claim as frivolous only "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them" and not simply because the Court may believe the "plaintiff's allegations unlikely." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). When determining whether a claim is malicious, the Court will analyze whether it was made in good faith. Kinney v. Plymouth Rock Squab Co., 236 U.S. 43, 46 (1915).

**II. Plaintiff's First Amended Complaint**

Plaintiff's First Amended Complaint describes a series of incidents that occurred while Plaintiff was placed on management status for over 30 days in the Secured Housing Unit 4A ("SHU") at Corcoran State Prison ("CSP"). (Doc. 11). Plaintiff states that during this time he was forced to sleep in a cold cell on the bare concrete without a mattress. (Doc. 11 at 9). He had no sheets, blankets, clothes, toiletries, drinking cup, or spoon and was without running water. (Doc. 11 at 9). He claims it was Defendants Sztukowski and Scaife that subjected him to these conditions and that Defendants Adams, Davis and Quinones had knowledge of such conditions through "the chain of command." (Doc. 11 at 9).

With regard to the conditions within his cell, Plaintiff states it was Control Officer Defendant Magana who kept the lights on 24 hours a day and who would turn up the cold air vent in his cell. (Doc. 11 at 10). According to Plaintiff, the lights and temperature are only controlled by the control tower and that Magana "had visual knowledge of Plaintiff's living conditions." (Doc. 11 at 10).

Plaintiff attributes his lack of running water to Defendants Bravo, Williams, Meza, and Huff. (Doc. 11 at 12.) He states that Bravo located the valve to shut off the tap and toilet water

in his cell and while the other defendants watched.  (Doc. 11 at 12).  Plaintiff explains that Defendant Davis also became aware of the conditions in Plaintiff's cell when he personally visited Plaintiff's cell and Plaintiff informed him of the issues with his cell conditions.  (Doc. 11 at 13-14).

In addition to Plaintiff's cell conditions, he complains that Defendants Bardonnex and Williams deprived him of yard time by falsifying records.  (Doc. 11 at 13).  According to Plaintiff, Bardonnex and Williams would skip his cell at yard time, but document that Plaintiff was refusing yard time.  (Doc. 11 at 13).

Plaintiff filed a "602 grievance" about his cell conditions and was later interviewed about his grievance by Defendant Scaife.  (Doc. 11 at 15).  "Some time after" his interview with Scaife, Plaintiff was assaulted with a broomstick by Defendant Cogdill and endured two hours of continuous pepper spray by Cogdill and Scaife.  Plaintiff complains that Quinones and Davis were present during the pepper spray incident.

Ten days into his confinement in management status, Plaintiff told Doe #1 of all the problems he was having.  Doe #1 told Plaintiff he would look into it, but never returned.  (Doc. 11 at 15).  While on management status, Plaintiff states that he was not able to access any psychiatric services.  He further contends that his prescriptive eye wear was confiscated and not returned to him.  (Doc. 11 at 9).  Additionally, he states that he did not receive legal mail and was unable to litigate any of his pending civil cases.  (Doc. 11 at 9).

Plaintiff explains that he became quite depressed while on management status.  (Doc. 11 at 11).  He informed Defendant Pruitt and Does #2 and 3 of the conditions of his cell and his need for medical care, but they did nothing for him.  (Doc. 11 at 11).

Plaintiff states that he "blacked out" on two occasions due to dehydration.  (Doc. 11 at 12).  Each time he states he was placed in a lanyard device by Defendants Haywood and Gonzalves while awaiting medical treatment.  (Doc. 11 at 12).  Plaintiff states that Defendants did not have a legitimate reason for using the device and that the manner in which Haywood and Gonzalves applied the device caused him excessive pain.  (Doc. 11 at 12).  He further claims that use of the devices was approved by Defendant Adams, Davis, and Quinones "through the chain of

1  command." (Doc. 11 at 12).

2  **III.  Pleading Requirements**

3  The Federal Rules of Civil Procedure outline the general requirements of pleading a

4  complaint.  A complaint is required to have a "short and plain statement" that outlines the

5  grounds for jurisdiction in that court as well as "showing that the pleader is entitled to relief; and

6  a demand for the relief sought."  Fed. R. Civ. P. 8(a).  Pro se complaints are generally held to

7  "less stringent standards" than complaints drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

8  520-21 (1972).

9  A complaint must afford fair notice to the defendant as well as state the elements of the

10  claim in a plain and succinct manner.  Jones v. Cmty Redevelopment Agency, 733 F.2d 646, 649

11  (9th Cir. 1984).  The complaint is supposed to give the defendant fair notice of the claims that are

12  being brought against him/her as well as the grounds for bringing them.  Swierkiewicz v. Sorema

13  N.A., 534 U.S. 506, 512 (2002).  The Supreme Court noted,

14  Rule 8 does not require detailed factual allegations, but it demands more than an
unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that
15  offers labels and conclusions or a formulaic recitation of the elements of a cause of
action will not do.  Nor does a complaint suffice if it tenders naked assertions
16  devoid of further factual enhancement.

17  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).

18  Allegations that are conclusory and vague do not support a cause of action.  Ivey v. Board of

19  Regents, 673 F.2d 266, 268 (9th Cir. 1982).  The Supreme Court further clarified that,

20  [A] complaint must contain sufficient factual matter, accepted as true, to "state a
claim to relief that is plausible on its face." [Citation] A claim has facial
21  plausibility when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged.
22  [Citation] The plausibility standard is not akin to a "probability requirement," but
it asks for more than a sheer possibility that a defendant has acted unlawfully.
23  [Citation] Where a complaint pleads facts that are "merely consistent with" a
defendant's liability, it "stops short of the line between possibility and plausibility
24  of 'entitlement to relief.'

25  Iqbal, 129 S.Ct. at 1949.  A Court is required to assume as true in the light most favorable to the

26  plaintiff, any well-pled factual allegations, when determining if the plaintiff is entitled to relief.

27  Id.  However, this tenet is "inapplicable to legal conclusions."  Id.  If a complaint fails to state a

28  recognizable claim, the Court has the discretion to grant leave to amend the complaint in order to

1   amend the deficiencies in the factual allegations.  Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th
2   Cir. 2000) (en banc).

3       **IV.  § 1983 Claims**

4       Section 1983 of title 42 of the United States Code does not confer substantive rights; but
5   instead provides "a method for vindicating federal rights elsewhere conferred."  Albright v.
6   Oliver, 510 U.S. 266, 271 (1994).  Section 1983 states in relevant part:

7       Every person who, under color of any statute, ordinance, regulation, custom, or
        usage, of any State… subjects, or causes to be subjected, any citizen of the United
8       States or other person within the jurisdiction thereof to the deprivation of any
        rights, privileges, or immunities secured by the Constitution and laws, shall be
9       liable to the party injured in an action at law, suit in equity, or other proper
        proceeding for redress.
10

11  42 U.S.C. § 1983.  In order to state a claim pursuant to § 1983, a plaintiff must allege facts that
12  support that (1) he was deprived of a right afforded to him by federal law, and (2) the deprivation
13  was committed by someone acting under color of state law.  West v. Atkins, 487 U.S. 42, 48-49
14  (1988); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976).  Additionally, a plaintiff is
15  required to allege a specific injury suffered, as well as show a causal relationship between the
16  defendant's conduct and the injury suffered by the plaintiff.  *See* Rizzo v. Goode, 423 U.S. 362,
17  371-72, 377 (1976); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person deprives
18  another of a federal right "if he does an affirmative act, participates in another's affirmative acts,
19  or omits to perform an act which he is legally required to do so that it causes the deprivation of
20  which complaint is made").  Section 1983 does not recognize respondeat superior liability.
21  Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978).  Accordingly, a supervisor may not be
22  held liable merely because a subordinate the plaintiff's constitutional.  Id.  "A supervisor is only
23  liable for constitutional violations of his subordinates if the supervisor participated in or directed
24  the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880
25  F.2d 1040, 1045 (9th Cir. 1989).

26      Lastly, similar to any other complaint, conclusory allegations that lack supporting facts
27  are insufficient to state a claim under § 1983.  Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir.
28  1977).

1    **V. Discussion**

2        Plaintiff's FAC alleges claims against Defendants under § 1983 for violation of his First,

3    Eighth, and Fourteenth Amendment rights.  (Doc. 11 at 16-31).  Although not included within

4    Plaintiff's causes of action, Plaintiff's FAC also asserts Defendants violated various California

5    statutes and regulations.  (Doc. 11 at 8-11, 15, 25-26).

6                        **A.        Alleged Violations of California law**

7        Plaintiff alleges that Defendants failure to provide him with access to any psychiatric

8    assistance and address his medical needs violated California Code of Regulations, Title 15

9    §§3330(g), 3331(L) and 3332(a)(b)(d)(f), §§3271, 3358(a)(b), 3361, 3362, 3365(a)(b)(c).  (Doc.

10   11 at 9, 11, 26).  He also claims his legal mail was withheld from him in violation of California

11   Penal Code §§ 2600 and 2601.  (Doc. 11 at 9).  Additionally, he asserts Defendants Haywood and

12   Gonzalves violated 15 CCR §3268.2(b) when they used a lanyard device while Plaintiff was

13   awaiting medical treatment.  (Doc. 11 at 12).  Finally, Plaintiff claims all defendants are liable for

14   their actions under 15 CCR §3413(a)(c).  These are state statutes and regulations that arise under

15   California law.  Because Plaintiff has alleged that each defendant is an employee of the State of

16   California's CDCR, he must also plead compliance with the California Tort Claims Act.  (Doc.

17   11 at 4-7).

18       Under the California Tort Claims Act, a plaintiff may not maintain an action for damages

19   against a public employee unless he timely filed a tort claim.  Cal. Gov't Code §§ 905, 911.2,

20   945.4 & 950.2; Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).

21   Thus, to raise a state claim, Plaintiff must allege facts demonstrating compliance with the

22   presentation requirement of the California Tort Claims Act.  State of California v. Superior Court,

23   32 Cal.4th 1234, 1243-44 (2004); Snipes v. City of Bakersfield, 145 Cal.App.3d 861, 865 (Cal.

24   App. 1983).  When a plaintiff fails to allege compliance, it is fatal to the cause of action and

25   results in the dismissal of the state law claim.  Id.; Willis v. Reddin, 418 F.2d 702, 704 (9th Cir.

26   1969).

27       Under the Tort Claims Act, claims "relating to a cause of action for . . . injury to a person"

28   must be presented no later than six months after the accrual of the cause of action."  Cal. Gov't

6

Code § 911.2(a). "Failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." Pimentel v. County of Fresno, 2011 U.S. Dist. LEXIS 10117, at *26 (E.D. Cal. Feb. 2, 2011), citing City of Stockton v. Superior Court, 42 Cal.4th 730, 738; Cal. Gov't. Code § 945.4.

Since Plaintiff has not pled compliance with the California Tort Claims Act, he has not pled sufficient facts to proceed with any of the state law claims throughout his FAC.  (Cal. Gov. Code 910 et seq.).

Furthermore, there is no private right of action under the California Code of Regulations or under the operating procedures maintained at the prison.  See e.g. Gonzaga University v. Doe, 536 U.S. 273, 283–86 (2002) (basing a claim on an implied private right of action requires a showing that the statute both contains explicit rights-creating terms and manifests an intent to create a private remedy); Parra v. Hernandez, 2009 WL 3818376 at *8 (S.D.Cal. Nov.13, 2009); Davis v. Kissinger, 2009 WL 256574 at *12 n. 4 (E.D.Cal. Feb.3, 2009), adopted in full, 2009 WL 647350 (Mar. 10, 2009).

Likewise, the Penal Code fails to provide a source of substantive rights which may be vindicated in a civil action.  See, e.g., Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th Cir.1999) (affirming trial court's order dismissing claims based upon violations of California Penal Code sections because they did not given rise to a private right of action); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.1980) (noting that 18 U.S.C. §§ 241, 242 provide no private right of action and cannot form basis for civil suit); Parra v. Hernandez, 2009 WL 3818376, at *7 (S.D.Cal.2009) (dismissing a prisoner's state law claim brought under a provision of the California Penal Code imposing criminal penalties on persons for lack of a private right of action). Therefore, Plaintiff fails to state a claim upon which relief may be granted based on the alleged violations of California statutes and regulations.

Accordingly, it is recommended that any claims brought under state law are **DISMISSED.**

## B.       Eighth Amendment Claims – Conditions of Confinement

Plaintiff alleges that his Eighth Amendment right was violated in several ways. Specifically he alleges claims of deprivation of basic necessities, use of excessive force, failure to

provide adequate medical care and denial of recreation time in the outdoor yard.  Each claim is analyzed under the Eighth Amendment protection against cruel and unusual punishment.  (Doc. 11 at 15-25).

The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"  Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1976)).  It prohibits the "unnecessary and wanton infliction of pain," including sanctions that are "so totally without penological justification that it results in the gratuitous infliction of suffering."  Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  However, the Eighth Amendment does not require that a prison be comfortable; the requirement is only that prison officials maintain that conditions are humane.  Farmer v. Brennan, 511 U.S. 825, 832 (1994). Accordingly, a prison is not required to provide every amenity desired but only must provide for basic human needs, which includes proper "food, clothing, shelter, sanitation, medical care, and personal safety."  Hoptowit, 682 F.2d at 1246.  Id. (citations omitted).

Eighth Amendment claims have both an objective and subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  To properly allege a claim, a prisoner needs to allege (1) that conditions of his imprisonment objectively posed a "substantial risk of serious harm" depriving him of basic necessities and (2) that prison officials subjectively acted with "deliberate indifference" to his health or safety.  Farmer, 511 U.S. at 834.

### 1.  Deprivation of basic necessities

The Eighth Amendment may not be used as a vehicle for prison reform, and absent a constitutional violation a court is unable to interfere with prison policy.  Hoptowit, 682 F.2d at 1246.  When assessing prison conditions, the Court evaluates each condition individually and determines whether it violates the Eighth Amendment.  Id.  In doing so, the Court must consider the "circumstances, nature, and duration of a deprivation of these necessities."  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (explaining the more basic a need the shorter amount of time it can be deprived before it becomes a violation).

Title 15 of the California Code of Regulations section 3332(f) defines provides,

> An inmate who persists in unduly disruptive, destructive or dangerous behavior and who will not heed or respond to orders and warnings to desist from such activity, may be placed in a management cell on an order of the unit's administrator or, in his or her absence, an order of the watch commander.

This Court has determined that placing an inmate in management status does not offend the Eighth Amendment.   In Loeb v. Felker, 2007 WL 677634 at 1 (E.D. Cal. Mar. 1, 2007), the Court held,

> California's regulations permit prison officials to place a prisoner on management cell status if he persists in disruptive, destructive or dangerous behavior (i.e. cell extraction, refusal to exit the yard, etc.). While on management status, a prisoner receives one t-shirt, one pair of socks, one pair of boxer shorts, and one blanket. He also may be denied yard access. While plaintiff argues that these conditions are harsh, they are not sufficiently serious such that they the Eighth Amendment. Johnson v. Lewis, 217 F.3d at 732.

In addition, in management status, the water to the cell is turned on only for five minutes each hour during the second and third watch and is turned on during the first watch for five minutes and upon the inmate's request. Loeb, 2007 WL 677634 at 1 n. 1.

Here, Plaintiff claims he was placed on management status by Defendants Sztukowski and Scaife for over 30 days.  (Doc. 11 at 8.)   Plaintiff alleges that during the 30-day period on management status, he was forced to sleep in a cold cell on the bare concrete floor with no mattress, sheets, blankets, clothes, toothbrush, toothpaste, soap, shoes, sheets, toilet paper, towels, spoon, or drinking cup" for thirty-days  (Doc. 11 at 9).  He states that his drinking water and toilet were turned off during this time. (Doc. 11 at 9). Plaintiff alleges also that he was denied food for this 30-day period.[1] Id. at 17. Plaintiff further alleges that the cold air vent was turned to high, thereby making the cell temperature extremely cold.  Id. at 20.

Management status is designed to discipline inmates who refuse to comply with orders to cease disruptive conduct.[2]  Thus, the fact that Plaintiff was placed on management status, with the concomitant reduction in privileges and the removal of excess possessions, alone does not state a

---

[1] However, the Court finds this allegation to lack facial plausibility.  Iqbal, 129 S.Ct. at 1949.  If he did not receive water or food for 30 days, there is little doubt that he would have died.  Likewise, if he was not given food or drink, the fact he was not given a spoon and drinking cup would have little consequence.  (Doc. 11 at 9) Moreover, his claim of being denied food for 30 days is completely at odds with his claim that he went on a "hunger strike."  Id. at 11.

[2] Describing management status as "punitive," adds nothing to the analysis.  (Doc. 11 at 17)  Indeed, management status *is designed to punish*.  It runs afoul of the Constitution only when the punishment is cruel and unusual.

claim under the Eighth Amendment.  Minor deprivations suffered for short periods of time will not rise to the level of an Eighth Amendment violation but "substantial deprivations of shelter, food, drinking water, and sanitation" may meet the standard despite their even shorter duration. Johnson v. Lewis, 217 F.3d 726, 732 (9th Cir. 2000); *see also* Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994) ("the length of time required before a constitutional violation is made out decreases as the level of filthiness increases.").

Generally, the Court would conclude that the failure to have a functioning toilet for four or more days states an Eighth Amendment claim.  In Johnson, the court held that deprivation of adequate drinking water and toilets for a span of four days was held to be serious enough to constitute a violation due the fact that they relate to basic human necessities of food and sanitation.  Id. at 732.  However, here, it simply is not plausible that Plaintiff was not able to flush his toilet for a 30-day period.  Iqbal, 129 S.Ct. at 1949.  If this truly was the case, the toilet bowl would have become full and would have overflowed onto the cell floor, which is not alleged to have happened.  Instead, consistent with the CDCR Operations Manual § 52080.22.4, if appears that Plaintiff is complaining that his water was shut off for all but the five-minute intervals dictated by the policy.[3] Loeb, 2007 WL 677634 at 1 n. 1.  Thus, the Court finds Plaintiff's failure to allege plausible factual support as to when the toilet was turned off and for how long each continuous period(s) lasted, is fatal to his claim.

For the same reasons, Plaintiff's claim that he was deprived of drinking water while in management status for 30 days, likewise, is not plausible and, it appears, instead he was deprived of a constant, ready source of water consistent with the management status policy. Thus, his allegation that the water was turned off, does not state an Eighth Amendment claim. Loeb, 2007 WL 677634 at 1 n. 1.

On the other hand, Plaintiff's claim that while held in management status for 30 days the lights remained on 24-hours per day, is sufficient to state a claim. Johnson, at 732.; *See* Young v. Smalls (S.D. Cal., Apr. 15, 2010) 2010 WL 1526370 *2. In addition, purposely subjecting

---

[3] There is no constitutional right to "flush at will."

1   Plaintiff to prolonged periods of "freezing" temperatures in his cell, states a claim.  Wilson, 501

2   U.S. at 304.

3                      **a.  Supervisor Liability Against Defendants Adams and Quinones**

4        There is no respondeat superior liability under 42 U.S.C. § 1983.  Palmer v. Sanderson, 9

5   F.3d 1433, 1437-38 (9th Cir. 1993); Monell, 436 U.S. at 691 (the supervisor of someone who

6   allegedly violated a plaintiff's constitutional rights is not made liable for the violation by virtue of

7   that role).  "Liability under § 1983 arises only upon a showing of personal participation by the

8   defendant. (Citation.)  A supervisor is only liable for constitutional violations of his subordinates

9   if the supervisor participated in or directed the violations, or knew of the violations and failed to

10  act to prevent them. Recently, the Supreme Court rejected that a supervisor can be held liable for

11  his mere "knowledge and acquiescence" in unlawful conduct by his subordinates. Ashcroft v.

12  Iqbal, 129 S. Ct. at 1949. The Court held,

13         . . . respondent believes a supervisor's mere knowledge of his subordinate's
           discriminatory purpose amounts to the supervisor's violating the Constitution. We
14         reject this argument. Respondent's conception of "supervisory liability" is
           inconsistent with his accurate stipulation that petitioners may not be held
15         accountable for the misdeeds of their agents. In a § 1983 suit or a Bivens action--
           where masters do not answer for the torts of their servants--the term "supervisory
16         liability" is a misnomer. Absent vicarious liability, each Government official, his
           or her title notwithstanding, is only liable for his or her own misconduct.
17

18  Id.

19       On the other hand, any officer may be held liable for failing to intervene in

20  unconstitutional conduct by another officer.  "'To state a claim for failure to intervene, Plaintiff

21  must allege circumstances showing that these officers had an opportunity to intervene and prevent

22  or curtail the violation (e.g., enough time to observe what was happening and intervene to stop it),

23  but failed to do so.' Gonzales v. Cate, 2010 U.S. Dist. LEXIS 100446, 2010 WL 3749236, *3

24  (E.D. Cal., 2010) (citing Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir.1995)).'" Lanier v.

25  City of Fresno, 2010 U.S. Dist. LEXIS 130459 (E.D. Cal. Dec. 8, 2010).

26       Here, Plaintiff alleges that Defendant Warden Adams and Lieutenant Quinones "through

27  the chain of command" were aware and had personal knowledge that Plaintiff was being denied

28  life necessities (Doc. 11 at 8). Likewise, the fact that other inmates wrote to Plaintiff's family

1    members and told them of Plaintiff's plight and these family members, in turn, wrote letters

2    regarding the situation does not demonstrate these Defendants ever received any such letters or, in

3    fact, whether the letters were even addressed to them.  Id. at 13. While he alleges the family

4    members placed "each named Defendant on personal notice of the treatment and living

5    conditions," he doesn't explain how or when this occurred.  The allegations are so vague—

6    apparently purposefully so—such that the Court cannot determine the number of family members

7    at issue and it cannot determine whether any of these family members ever spoke to any of the

8    Defendants or, if so when or what was said.

9        Such allegations are mere conclusions and are not facts showing that these Defendants

10   were aware of and condoned the actions of their subordinates or that they had sufficient time to

11   observe the conduct and to intervene to stop it.  As noted above, awareness that Plaintiff had been

12   placed in management status is insufficient to infer these Defendants were aware that he was

13   being denied running water and was forced to spend 24 hours per day in full light.

14       Thus, it is recommended that Plaintiff's claims for supervisory liability against

15   Defendants Adams and Quinones for deprivation of basic necessities in violation of the Eighth

16   Amendment be **DISMISSED**.

17       **b.   Defendants Bravo, Huff, Meza, Williams, Davis, Does #1-3, Pruitt,**

18       **Magana, Bardonnex, Silva, Gonzalvez, Haywood, Foley, and Scaife**

19       Plaintiff has also alleged that Defendant Davis "paid him a visit" during the time he was

20   on management status. (Doc. 11 at 14).  Plaintiff states that he showed Defendant Davis that his

21   sink and toilet did not function, that there was fecal matter and urine in the toilet, but that

22   Plaintiff's living conditions remained unchanged.  (Doc. 11 at 14).  Such factual allegations are

23   sufficient to support an Eight Amendment claim against Defendant Davis for condoning such

24   conditions.

25       Plaintiff alleges Defendant Magana purposefully left the light on in Plaintiff's cell during

26   the night and "turned up" the air conditioning to make the cell "freezing."  (Doc. 11 at 10, 19.)

27   Plaintiff alleges Magana knew he did not have blankets or clothing with which to bundle up

28   because, as the control officer, he had a direct view into Plaintiff's cell.  Id.

Plaintiff alleges that he made Defendant Pruitt (also referred to as "Pratt") aware of the conditions of the cell. (Doc. 11 at 11)  Plaintiff explained about the cold temperature and the light being on 24 hours per day. Id.  He told Pruitt that the conditions had lasted "days on end" and that he had become suicidal.  Id.  In response, Pruitt told Plaintiff he "didn't have shit coming."  Id.  These allegations are minimally sufficient to state a claim against Pruitt.  For the same reasons, Plaintiff has stated a claim against John Doe 2 and John Doe 3.  Id. at 11-12.

In addition, Plaintiff's allegations that he informed John Doe #1 of the lack of water, blankets, and other necessities, and that John Doe #1 agreed to "check it out," but did not return, is sufficient to establish an Eighth Amendment claim.  (Doc. 11 at 14)  Plaintiff has alleged that he informed this Defendant that these conditions had existed for 10 days and, indeed, continued to exist for 20 days more.  Thus, these allegations are minimally sufficient to state a claim against Defendant John Doe 1.

On the other hand, Plaintiff has alleged that Defendant Bravo turned off his water valve and that Defendants Huff, Meza, and Williams were present when Bravo took this action.  He alleges they each wanted the water turned off and each tried to do so but only Bravo was successful.  However, merely turning off the water is insufficient to demonstrate an Eighth Amendment claim.  Indeed, turning off the water is required by management cell status.  Thus, Plaintiff was required to demonstrate these Defendants turned the water off and knew it continued to be off for an unconstitutional period of time.  Johnson, at 732.

Plaintiff's mere conclusions that several other Defendants were aware of or "were smart enough to draw an inference" about the conditions in his cell are not facts to sufficient to show that Defendants were, in fact, aware of the conditions in his cell, the harm caused by such conditions, or that the Defendants had the ability to control Plaintiff's housing conditions.  (Doc. 11 at 17). Furthermore, though Plaintiff alleges that, Bardonnex, Silva, Gonzalvez, Haywood, Foley, and Scaife were aware of his cell conditions because he told them and because they could observe this during their daily "security checks," this is insufficient.  (Doc. 11 at 17). He fails to allege what he told them and when such that the Court can conclude that they were aware of unconstitutional conditions.  Instead, Plaintiff seems to want to make a vague, blanket allegation

1    without pointing to the specific wrongful acts of each individual.  However, the Court cannot

2    conclude they were all together when he told them whatever information he told them or that they

3    conducted their security checks as a group.  Thus, the content of the information each Defendant

4    received varied.  For example, a person making a security check in the day hours, would find

5    nothing unusual—nor would there be anything unconstitutional--about the light being on in the

6    cell.  On the other hand, the mere fact that water was off at the time of a security check, is not

7    enough unless there is factual support that the observer was also ware that the water had been

8    turned off for an extended period.  Therefore, based upon the facts alleged, there is no way to

9    determine whether these Defendants knew conditions existed for an unconstitutional period.

10   Thus, Plaintiff has failed to state a claim against them.

11        Thus, it is recommended that Plaintiff's claims against Defendants Bardonnex, Silva,

12   Gonzalvez, Haywood, Foley, Scaife, Huff, Meza, Bravo and Williams for deprivation of basic

13   necessities in violation of the Eighth Amendment be **DISMISSED**.

14                          **2. Excessive force**

15        The proper inquiry for Eighth Amendment claims in the context of excessive force, is

16   whether the use of force was done in good-faith to "to maintain or restore discipline, or

17   maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  Any

18   malicious or sadistic use of force to cause harm will always violate contemporary standards of

19   decency.  Id. at 9.  Accordingly, the objective component of an Eighth Amendment claim does

20   not require Plaintiff to allege significant injury as a result of excessive force.  Id.

21        Here, Plaintiff alleges Defendant Cogdill beat him with a broom stick and repeatedly

22   stabbed him with the broken end of the broomstick.  (Doc. 11 at 15).  He claims Defendants

23   Cogdill and Scaiffe further retaliated against him by spraying him with over fifteen cans of

24   pepper spray for "about two hours straight" and introducing "t-16 grenade bombs" into his cell.

25   (Doc. 11 at 15).  Plaintiff claims that Quinones and Davis were present during this event and

26   videotaped it.  (Doc. 11 at 15).

27        Because the Court must assume these facts to be true at this stage, it appears that Plaintiff

28   has properly plead factual allegations that establish Defendants Cogdill and Scaiffe used

excessive force and Quinones and Davis condoned the use of excessive.  Therefore, Plaintiff has stated a cognizable claim against Defendants Cogdill, Scaiffe, Quinones and Davis for excessive force.

Also, Plaintiff alleges defendants Haywood and Gonzalves used excessive force when they used a "lanyard device chain" to remove Plaintiff from his cell and chain him to a cell door. (Doc. 11 at 11).  He claims that when attached to the wrists, it pinched his nerves and caused him pain and numbness.  (Doc. 11 at 11).  Plaintiff not only disagrees with the manner in which Defendants used the lanyard, but seems to object to the use of a lanyard for any purpose. Plaintiff seeks to impose liability on Defendant Adams, Davis and Quinones because they approved and authorized lanyard use "through the chain of command."  (Doc. 11 at 12 and 25).  However, the Court is not permitted to second-guess prison officials' decisions to use particular security measures that are used in good faith to preserve prison security.  His conclusion, without factual support, Defendants did not use the lanyard for any legitimate purpose is insufficient.  (Doc. 11 at 24).  Thus, it is recommended that Plaintiff's cause of action related to the use of the lanyard against these Defendants Haywood, Gonzalves, Adams, Davis, and Quinones be **DISMISSED**.

### 3.  Failure to provide adequate medical care

To properly allege a claim based on a failure to administer adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  A prisoner is required to allege that (1) he objectively has a "serious medical need" and (2) that the defendant subjectively responded with "deliberate indifference" to that need.  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).  A prisoner has a serious medical need if failure to treat a condition of his "could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974 F.2d at 1059 (quoting  Estelle, 429 U.S. at 104).  A serious medical need is any condition that a reasonable doctor would find worthy of treatment and one that significantly impacts a person's daily activities, or causes substantial or chronic pain.  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

1    Here, Plaintiff alleges several separate claims that his medical needs were not properly
2    addressed.  He claims that he suffers from blindness and damage to his right eye and that his
3    prescriptive eye was confiscated.  (Doc. 11 at 9).  However, he fails to state any facts to show
4    how deprivation of his eye wear caused him any harm.  Id.  Likewise, he states no facts to tie the
5    loss of his eye wear to any particular defendant.  Thus, he has not stated a claim for inadequate
6    medical care based upon these facts.

7    Plaintiff alleges also that while in management status, he developed suicidal thoughts.
8    (Doc. 11 at 10-11). He made Defendant Pruitt aware of his mental deterioration and requested
9    mental health treatment.  (Doc. 11 at 10-11).  However, Pruitt, a "psych tech" refused to provide
10   care.  (Doc.  11 at 10-11). The Ninth Circuit has held heightened suicide risk to be a serious
11   medical need.  Simmons v. Navajo County, 609 F.3d 1011, 1018 (9th Cir. 2010).  Therefore,
12   Plaintiff has established that his suicidal thoughts were a serious medical need.

13   Though  Plaintiff  had  received  mental  health  treatment  in  the  past,  Plaintiff's  mere
14   allegation that he told her he was having the suicidal thoughts is insufficient to establish that
15   Pruitt subjectively believed Plaintiff to be at substantial risk.  See Simmons, 609 F.3d at 1018-20.
16   Likewise, Plaintiff's statement to Pruitt that he was on a hunger strike does not demonstrate that
17   she believed him to be in need of medical care at the time.  Thus, there are no other allegations
18   that anything observable to Pruitt made her believe that Plaintiff's condition was acute.  Plaintiff
19   has therefore failed to state a cognizable claim against Pruitt for inadequate medical care.

20   Plaintiff claims that three days into his hunger strike, he informed Jane Doe #3 and John
21   Doe #2 of the conditions of his cell, "the effects it was having on him," and his need for medical
22   assistance.  While Plaintiff concludes that Jane Doe and John Doe drew "inferences of the risk of
23   harm," he states no facts to show that these defendants observed anything that would make them
24   believe he was in need of medical care.  Thus, the complaint fails to state a claim against these
25   defendants for inadequate medical care.

26   Based upon the foregoing, it is recommended that Plaintiff's claim for inadequate medical
27   care be **DISMISSED**.

28   ///

16

**4.  Deprivation of outdoor exercise**

The deprivation of outdoor exercise can amount to a violation of a prisoner's Eighth Amendment rights.  Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995).  The Ninth Circuit has stated, "some form of regular outdoor exercise is extremely important to the psychological and physical well-being of the inmates."  Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). Therefore, as a general rule, prison officials may not deprive inmates of regular exercise.  *See* Toussaint v. McCarthy, 597 F. Supp. 1388, 1393 (N.D. Cal. 1984).  Nevertheless, outdoor exercise can be restricted on the basis of weather, unusual circumstances, or disciplinary needs. *See Spain*, 600 F.2d at 199; *see also* LeMaire v. Maass, 12 F.3d 1444, 1457-58 (9th Cir. 1993) (where the deprivation of outdoor exercise "most of a five-year sentence" as a disciplinary measure for plaintiff's rule violations did not rise to a constitutional violation because the plaintiff was still able to exercise in his cell).  Likewise, this Court has held that an inmate may be denied yard time for limited periods while placed on management status. Loeb v. Felker, 2007 U.S. Dist. LEXIS 14280 at *14-15.  In any event, "the Ninth Circuit has not identified a specific minimum amount of weekly exercise that must be afforded" under the Eighth Amendment."  Jayne v. Bosenko, No. 2:08-cv-2767-MSB, 2009 WL 4281995, at *8 (E.D. Cal. Nov. 23, 2009) (citation omitted). In determining whether a deprivation of outdoor exercise is sufficiently serious, the Court must consider the circumstances, nature, and duration of the deprivation.  Spain, 600 F.2d at 199.

Here, Plaintiff alleges he was denied "yard" exercise time by Defendants Williams and Bardonnex for forty-four days.  (Doc. 11 at 13).  Plaintiff states these officers informed him that he had been placed on yard restriction at the request of Defendant Quinones, but that no such order from Defendant Quinones existed.  (Doc. 11 at 13 and 20).  Plaintiff also alleges that Williams and Bardonnex falsified the log book to reflect that he was refused yard time, when he did not. (Doc. 11 at 20).  Plaintiff claims that he suffered mental anguish, depression, emotional pain, psychiatric disorders and loss of weight as a result.  (Doc. 11 at 21).  Taking Plaintiffs allegations as true, Plaintiff has alleged sufficient facts to state a claim under the Eighth Amendment for denial of exercise time. Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir.2000)

(denial of all outdoor exercise for six weeks meets objective Eighth Amendment requirement). While Plaintiff concludes that numerous other defendants were aware of "such oppressive treatment," he fails to state any facts to demonstrate that anyone other than Williams and Bardonnex deprived him of exercise time during the 44 day period. Thus, the Court finds that Plaintiff has stated a cognizable claim under section 1983 against Defendants Bardonnex and Williams only for depriving him of yard time and recommends that the such claims against Huff, Meza, Bravo, Pruitt, Silva, Gonzalvez, Haywood, Foley, Scaife, Davis, Quinonez, Sztowski and Does 1-3 be **DISMISSED**.

### C.     Fourteenth Amendment Claim

The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id.

The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Wilkinson, 545 U.S. at 221; *see also* Hewitt v. Helms, 459 U.S. 460, 466–68, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir.2007). In Sandin, the Supreme Court abandoned earlier case law which had held that states created protectable liberty interests by way of mandatory language in prison regulations. Sandin, 515 U.S. at 481–84.

In the instant case, Plaintiff argues that the policy permitting his ongoing placement in a disciplinary classification beyond 10 days violates his liberty interests. (Doc. 11 at 25-26, citing 15 CCR 3330-3333 and Penal Code sections 2651 and 5058.) Plaintiff claims he was confined to his cell for over thirty days, had no yard time for 44 days, and had no access to legal mail, no

contact with family, no running water, no sanitation, no linens nor clothing. (Doc. 11 at 9-16). However, as noted above, placement in management status or holding an inmate in a disciplinary placement for 30 days, does not offend the Constitution. Sandin, 515 U.S. at 486.  Likewise, an inmate has no liberty interest in being confined to general population rather than in a disciplinary placement. Moody v. Daggett, 429 U.S. 78, 97 (1976); *see also* Hewitt v. Helms, 459 U.S. 460, 466 (1983) (there is no liberty interest in being confined in the general population rather than in the more restrictive classification).  Therefore, it is therefore recommended that Plaintiff's Fourteenth Amendment Due Process claim be **DISMISSED**.

### D.   First Amendment Protections

Although Plaintiff does not allege a "cause of action" for violation of the First Amendment, Plaintiff does allege two claims which implicate his First Amendment rights.  First, Plaintiff alleges he was retaliated against by prison officials for filing grievances and lawsuits against other prison personnel.  (Doc. 11 at 15).  Second, he claims while in management cell-status he was prevented from sending mail including legal mail which prevented access to the courts.  (Doc. 11 at 10).

### 1.   Retaliation

Prisoners have rights under the First Amendment to pursue civil rights litigation and file prison grievances.  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).  The Ninth Circuit has stated,

> Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such as actions violate the Constitution quite apart from any underlying misconduct they are designed to shield.

Rhodes, 408 F.3d at 567.  Therefore, allegations of retaliation against a prisoner's exercise of these First Amendment rights can support a claim under § 1983.  Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).

For a prisoner to properly state a claim for of violation of his First Amendment rights, he

1    is required to establish "five basic elements: (1) An assertion that a state actor took some adverse

2    action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

3    (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

4    reasonably advance a legitimate correctional goal."  Rhodes, 408 F.3d at 567-68.  The proper

5    inquiry is whether the defendant's action is defined as one that "would chill or silence a person of

6    ordinary firmness from future First Amendment activities."  White v. Lee, 227 F.3d 1214, 1228

7    (9th Cir. 2000) (quoting Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th

8    Cir. 1999)).

9         Here, Plaintiff alleges Defendants Scaiffe and Cogdill retaliated against Plaintiff for filing

10   a "602 prison grievances" regarding the conditions of his imprisonment (Doc. 11 at 15) and for

11   filing previous grievance and maintaining lawsuits against their coworkers ay CSP.  (Doc. 11 at

12   15).  He states defendants Cogdill and Scaiffe assaulted him because he had filed previous

13   grievances and maintained lawsuits against their co-workers at CSP.  (Doc. 11 at 15).  However,

14   he provides no factual support for his conclusion that this action was taken to retaliate against him

15   for the filing of the grievances.  Plaintiff statement that such actions occurred "some time after"

16   he met with Scaife about his "602" is not sufficient to establish that the timing of the alleged

17   action was a result of Plaintiff's 602.  Thus, it is recommended that Plaintiff claims of retaliation

18   against these defendants be **DISMISSED**.

19                          **2.  Access to Courts**

20        Prisoners have a fundamental constitutional right of "meaningful" access to the courts.

21   Lewis v. Casey, 518 U.S. 343, 246 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977).  The

22   Supreme Court has defined prisoners' right of access to the courts as the "right to bring to court a

23   grievance."  Lewis, 518 U.S. at 354.  This right of access to courts is limited to direct criminal

24   appeals, habeas corpus proceedings, and civil rights actions challenging conditions of

25   confinement.  Id. at 351.  A prisoner or detainee alleging a violation of his right of access to the

26   courts is required to demonstrate that he has suffered an "actual injury."  Id. at 349-50.

27        An actual injury is defined as "actual prejudice with respect to contemplated or existing

28   litigation, such as the inability to meet a filing deadline or to present a claim."  Lewis, 518 U.S. at

348.  Therefore, a plaintiff must show that the defendants "hindered his efforts to pursue a legal claim."  Id. at 351.  When seeking relief for a lost opportunity to present a legal claim or relief from an unfavorable outcome in a prior legal claim, "a plaintiff must show 1) the loss of a non-frivolous or arguable claim; 2) the defendant's acts frustrating the litigation; and 3) that the relief sought is unobtainable in a presently existing suit."  Hollis v. York, 2010 U.S. Dist. LEXIS 109820, at *19 (E.D. Cal. Oct. 15, 2010) (citing Christopher v. Harbury, 536 U.S. 403, 413-416 (2002)).

Here, Plaintiff alleges he was denied the right to send "legal mail" and was not allowed to communicate with his lawyers or litigate his pending civil cases.  (Doc. 11 at 10).  However, Plaintiff has failed to allege any actual injury suffered as a result of not being able to access his legal mail.  He fails to establish that he suffered any prejudice regarding any contemplated or pending litigation.  Therefore, Plaintiff has failed to state a cognizable claim for denial of access to the courts in regards to his denial of legal mail.  As a result, it is recommended that any claim based upon Plaintiff's access to courts be **DISMISSED**.

### E.     No leave to amend

Because Plaintiff again fails to state a claim as to certain defendants and certain claims, it does not appear Plaintiff is able to cure these deficiencies by amendment.  Thus, the Court finds that granting Plaintiff further leave to amend would be futile.  *See* Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (requiring leave to be granted to the extent deficiencies can be cured by amendment).

## FINDINGS AND RECOMMENDATIONS

Based upon the foregoing, the Court **RECOMMENDS**:

1.     That Plaintiff's Eighth Amendment claims for supervisory liability against Defendants Adams and Quinones for deprivation of basic necessities in violation of the Eighth Amendment be **DISMISSED**;

2.     That Plaintiff's Eighth Amendment claims against Defendants Bardonnex, Silva, Gonzalvez, Haywood, Foley, Scaife, Huff, Meza, Bravo and WIlliams for deprivation of basic necessities in violation of the Eighth Amendment be

1    **DISMISSED**.

2    3.    That Plaintiff's Eighth Amendment claims against Defendants Huff, Meza, Bravo,

3          Pruitt, Silva, Gonzalvez, Haywood, Foley, Scaife, Davis, Quinonez, Sztowski and

4          Does 1-3 relating to loss of yard time be **DISMISSED**;

5    4.    That Plaintiff's Eighth Amendment claims against Defendants Haywood,

6          Gonzalves, Adams, Davis, and Quinones related to the use of the lanyard be

7          **DISMISSED**;

8    5.    That Plaintiff's Eighth Amendment claims against Defendants Pruitt, Does #1-3,

9          Adams, Davis, Quinones, Huff, Meza, Bravo, Williams, Bardonnex, Silva,

10         Gonzaleves, Haywood, Foley, Magan, Sztukowski, and Scaife for inadequate

11         medical care be **DISMISSED**;

12   6.    That Plaintiff's Fourteenth Amendment Due Process claim be **DISMISSED;**

13   7.    That Plaintiff  First Amendment claims of retaliation against all defendants be

14         **DISMISSED**;

15   8.    That Plaintiff  First Amendment claims based upon Plaintiff's access to courts be

16         **DISMISSED**; and

17   9.    That all claims not brought under the Eighth Amendment, including those brought

18         under any state law statute including the Penal Code, any operating manual of the

19         CDCR or CSP, and the California Code of Regulations be **DISMISSED**;

20                                **ORDER**

21   Based upon the foregoing, the Court **ORDERS**:

22   1.    The Court finds Plaintiff has stated an Eighth Amendment violation against

23         Defendants Does #1-3, Pruitt, Magana, and Davis for deprivation of basic

24         necessities;

25   2.    The Court finds Plaintiff has stated an Eighth Amendment violation against

26         Defendants Cogdill, Scaiffe, Quinones and Davis for excessive force.

27   3.    The Court finds that Plaintiff has stated an Eighth Amendment violation against

28         Defendants Bardonnex and Williams for depriving him of yard time;

4.    The Court finds service of Plaintiff's First Amended Complaint (Doc. 11) is appropriate for, and shall be initiated upon, Defendants Williams, Davis, Cogdill, Scaiffe, Quinones, Bardonnex, Pruitt, Magana and Does 1-3[4];

5.    The Clerk of Court is **DIRECTED** to send Plaintiff one USM-285 form, one summons, a Notice of Submission of Documents form, an instruction sheet and a copy of the First Amended Complaint filed October 3, 2011;

6.    Within 21 days from the date of this order, Plaintiff **SHALL** complete the attached Notice of Submission of Documents and submit the completed Notice to the Court with the following documents:

   a.    One completed summons for each non-Doe defendant listed above;

   b.    One completed USM-285 form for each non-Doe defendant listed above;

   c.    Eight copies (one for each non-Doe defendant) of the First Amended Complaint filed October 3, 2011;

7.    The U.S. Marshal is **DIRECTED** to serve a copy of the First Amended Complaint, summons, and this order upon each defendant as directed by Plaintiff in the USM form.

**Plaintiff is cautioned that failure to comply with this order will result in a recommendation that this action be dismissed pursuant to Local Rule 110.**

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within 10 days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file

---

[4] Service as to the Doe Defendants will occur when Plaintiff identifies their true identities.  Pursuant to Fed. R. Civ. P. 4, Plaintiff is advised he **must** work diligently and quickly to discover this information.  Failing this, the Court will dismiss these Defendants  sua sponte or upon a motion of the parties.

objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __**January 11, 2013**__          _____**/s/ Jennifer L. Thurston**_____
                                                    UNITED STATES MAGISTRATE JUDGE