KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Supervising Deputy Attorney General
MICHELLE L. ANGUS, State Bar No. 210031
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 445-2395
  Fax:  (916) 324-5205
  E-mail:  Michelle.Angus@doj.ca.gov
*Attorneys for Nonparty*
*California Department of Corrections and*
*Rehabilitation*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **GEORGE E. JACOBS IV,** | 1:10-cv-02349 AWI-JLT (PC) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER** |
| v. | |
| **A.C. QUINONES, et al.,** | |
| Defendants. | Judge:       The Hon. Jennifer L. Thurston<br>Action Filed:  February 21, 2013 |

## INTRODUCTION

Jacobs, a state inmate proceeding in pro se, sues under 42 U.S.C. 1982 claiming that Defendants used excessive force and deprived him of basic necessities and yard time in violation of the Eighth Amendment.  Specifically, Plaintiff has sued Defendants Pruitt,[1] Magana, and Davis for deprivations of basic necessities; Defendants Cogdill, Scaiffe, Quinones, and Davis for excessive force; and Defendants Bardonnex and Williams for depriving Plaintiff of yard time.

---

[1] Nonparty California Department of Corrections and Rehabilitation was unable to locate an employee at Corcoran State Prison with this name but believes Pratt is the correct name.

1

1   On June 13, 2014, the California Department of Corrections and Rehabilitation (CDCR)

2   was served with a subpoena duces tecum.  (ECF No. 63.)  The subpoena seeks all documents

3   reflecting complaints, disciplinary action, or investigations taken against Defendants Pratt,

4   Magana, or Davis for deprivation of basic necessities; Defendants Cogdill, Scaiffe, Quinones, and

5   Davis for excessive force; and Defendants Bardonnex and Williams for restricting an inmate's

6   yard time.  The subpoena also seeks all complaints against any Defendant regarding false

7   testimony.

8   After identifying all potentially responsive documents to the subpoena, CDCR has

9   determined that compliance with the subpoena would require production of privileged and

10  confidential information.  Consequently, CDCR moves to quash the subpoena.  Alternatively,

11  CDCR seeks a protective order providing, at a minimum, that CDCR be allowed to privilege and

12  withhold specific documents and redact the names of all non-party individuals in the responsive

13  documents.

14  **ARGUMENT**

15  **I.   GOOD CAUSE EXISTS TO QUASH THE SUBPOENA.**

16  A subpoena may be quashed under Federal Rule of Civil Procedure 45(c)(3)(A)(iii) if it

17  requires disclosure of privileged or other protected matter, if no exception or waiver applies.

18  When a party asserts a privilege, the court should conduct a case-by-case determination of

19  whether the documents should be produced.  *Burlington Northern & Santa Fe Ry. v. United*

20  *States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

21  Official information that is designated as confidential is considered privileged information

22  not subject to discovery.  *Sanchez v. City of Santa Ana,* 936 F.2d 1027, 1033 (9th Cir. 1991); *Kerr*

23  *v. U.S. Dist. Ct. for N.D. Cal.,* 511 F.2d 192, 198 (9th Cir. 1975).  The privilege covers a wide

24  array of confidential data, communications, and information collected and compiled by law

25  enforcement agencies.  *Sanchez,* 936 F.2d at 1033 (officer personnel files); *Kelly v. City of San*

26  *Jose,* 114 F.R.D. 653, 655 (N.D. Cal. 1987) (citizen's complaints, internal affairs files, and policy

27  documents related to arrest techniques and using force).  In determining what level of protection

28  should be afforded by this privilege, courts conduct a case by case balancing analysis, in which

2

the interests of the party seeking discovery are weighed against the interests of the governmental

entity asserting the privilege.  *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995)

(citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987)).   When a party asserts

the official information privilege, "courts must weigh the potential benefits of disclosure against

the potential disadvantages.  If the latter is greater, the privilege bars discovery." *Sanchez,* 936

F.2d at 1033-34.

Government personnel files are deemed to be official information and subject to the

privilege for such information.  *Sanchez,* 936 F.2d at 1033.  Additionally, the discovery of

employment records is restricted by California statutes, including Penal Code sections 832.7 and

832.8, Government Code section 6254, and Civil Code sections 1798.24 and 1798.40, as well as

section 3400 of Title 15 of the California Code of Regulations.  Personnel files are also protected

under California Evidence Code section 1040, *et. seq.,* including section 1043.

In California, employees also have a right to privacy in their employment records.  *Harding*

*Lawson Associates v. Superior Court,* 10 Cal. App. 4th 7, 10 (1992).  While state privilege

doctrine is not binding on federal courts in civil rights cases brought under federal statues, federal

courts should give some weight to privacy rights that are protected by state constitutions or state

statutes.  *Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D. Cal 1987).

There also exists a public policy interest in protecting prisoners from the prying eyes of

other inmates, as well as shielding them from information that implicates prison security.  *See*

*generally Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128.  Notably, custodians of

potentially private records do have standing to assert the privacy rights of the individuals whose

records are being sought in discovery.  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551

n.2 (E.D. Cal. 1990), overruling on other grounds recognized in *Jackson v. County of*

*Sacramento*, 175 F.R.D. 653, 654 (E.D. Cal. 1997).

Here, Plaintiff's subpoena seeks production of all documents reflecting complaints,

disciplinary action, or investigations taken against Defendants Pratt, Magana, or Davis for

deprivation of basic necessities; Defendants Cogdill, Scaiffe, Quinones, and Davis for excessive

force; and Defendants Bardonnex and Williams for restricting an inmate's yard time.  The

3

1   subpoena also seeks all complaints against any Defendant regarding false testimony.  As set forth

2   in the privilege log attached as Exhibit A, CDCR should not be required to produce the requested

3   documents because all of them fall within CDCR's official information privilege, as well as

4   violate the privacy rights of Defendants and third parties.

5
       **A.    Producing the Requested Complaints Would Require CDCR to Produce
               Information Protected by the Official Information Privilege.**
6

7       Here, Plaintiff's subpoena seeks all complaints against the Defendant correctional officers,

8   which includes inmate grievances, staff complaints, and other internal investigations.

9       Preliminarily, of the few responsive documents that exist, none of the allegations have been

10  substantiated.  (Kimbrell Decl. ¶ 14.)  Moreover, Plaintiff's subpoena improperly seeks character

11  evidence.  Plaintiff is inquiring whether any Defendant has allegedly mistreated other inmates.

12  But, Plaintiff is precluded from offering extrinsic character evidence to argue that a party acted in

13  conformity with such alleged character.  Fed. R. Evid. 608(b).  Thus, the evidence sought by

14  Plaintiff is neither admissible nor reasonably calculated to lead to the discovery of any admissible

15  evidence.  This is especially true since there are no substantiated findings of alleged mistreatment

16  and unsubstantiated allegations have no probative value whatsoever.

17      Furthermore, depending on whether any prior inmate grievances were classified as staff or

18  non-staff complaints will determine whether they could be located.  Staff complaints can be

19  located by searching with the officer's name.  (Kimbrell Decl. ¶¶ 16-17.)  Inmate grievances that

20  are not designated as staff complaints, however, must be searched by inmate name.  *Id.*

21  Accordingly, the latter grievances could not be located because the Central File (C-File) of every

22  inmate who ever resided at any prison where Defendants worked during an unspecified period

23  would have to be checked, which would be incredibly burdensome, if not impossible.

24      More importantly, the purpose of maintaining confidentiality of correctional staff's

25  personnel records is required by law in order to preserve the safety and security of the institution

26  and the safety of employees.  (Kimbrell Decl. ¶ 15.)  Inmate grievances that are accepted by the

27  hiring authority (warden) as staff complaints must be investigated, and such an investigation is

28

                                            4

1  confidential and considered a personnel document protected from disclosure by the Peace Office

2  Bill of Rights.  *Id.*

3        Additional safety and security concerns associated with disclosing other inmate grievances

4  and documents revolve around the actual content of the grievances and potential problems from

5  disclosing such information.  As part of the investigation of staff complaints, other inmates may

6  be identified as witnesses or persons having information, and sometimes as confidential

7  informants, and their statements and names may be recorded in writing in any report that is

8  generated as part of the investigation.  (Kimbrell Decl. ¶¶ 18-21.)  Other officers may also be

9  identified and their statements may also appear in the report.  *Id.*  Disclosing any of the

10  aforementioned information can give rise to serious safety and security concerns.  For example, if

11  an inmate is questioned and his statement does not "support" the complaining inmate's version of

12  events, the inmate who made the statement may suffer physical retaliation from the complaining

13  inmate either directly or through other inmates.  (Kimbrell Decl. ¶¶ 18, 20.)  There have been

14  incidents where this has occurred because the confidential information was inadvertently

15  disclosed.  *Id.*

16        Likewise, an officer who gives a different version of events may also become the subject of

17  possible assault by the complaining inmate either directly or through other inmates.  And other

18  officers may be hesitant to disclose information about the officer against whom the complaint was

19  made if the reporting officer knows that his name will be disclosed.  (Kimbrell Decl. ¶ 18.)  In

20  addition, disclosure of the investigative report alerts inmates as to the procedures employed in

21  investigating staff complaints and this can undermine the investigative process.  (Kimbrell Decl. ¶

22  19.)

23        Finally, attachments to the appeals could also be highly confidential, e.g., probation reports

24  which include details about the inmate's crimes.  (Kimbrell Decl. ¶ 20.)  Disclosing this

25  information not only violates the inmate's right to privacy and possibly violates the law where

26  medical information is concerned, but may create a safety and security concern if highly sensitive

27  information were leaked to other inmates.  Such sensitive information, for example, can include

28  an inmate appealing his "R" suffix that he has because he committed a sexually related offense.

1   Disclosure of this information could result in the complaining inmate being assaulted or killed by

2   other inmates who learn of his "R" suffix.  *Id.*  The inmate's grievance could disclose how much

3   money is in the complaining inmate's trust account, which could endanger the inmate by

4   subjecting him to possible extortion.  The complaint could also disclose an inmate's HIV status or

5   psychological problems, which violates his right to privacy.  *Id.*  Moreover, there have been

6   incidents where inmates have inadvertently received confidential information that led to an

7   assault against an inmate for, e.g., snitching.  *Id.*  These examples are merely illustrative of the

8   potential dangers of disclosing the requested complaints.

9          For all of these reasons, the balancing in this instance weighs sharply in favor of non-

10  disclosure.  The primary rights and interests of nonparty prisoners, as well as Defendants and

11  other correctional officers, far outweighs Plaintiff's need for the requested information.  This is

12  especially true since none of the complaints against Defendants were substantiated.

13          **B.     Producing the Requested Investigations and Disciplinary Actions Would
                      Require CDCR to Produce Information Protected by the Official**
14                   **Information Privilege.**

15          The second category of documents Plaintiff's subpoena seeks are investigations and

16  disciplinary actions taken against Defendants.  Such records are clearly personnel records and are

17  entitled to the official information privilege and right to privacy well-established by California

18  statute and legal precedent.

19          Furthermore, these records should not be disclosed for many of the same reasons that the

20  requested complaints should not be disclosed, most importantly of which is the fact that none of

21  these officers have any sustained investigations or disciplinary actions.  (Kimbrell Decl. ¶ 14.)

22          Indeed, CDCR can satisfy all of the elements of the *Kelly* test.  *Kelly*, 114 F.R.D. 653 at 670.

23  First, CDCR has generated and/or collected all of the investigation documents and disciplinary

24  action records and has a process in place to maintain the confidentiality of personnel folders.

25  Second, Litigation Coordinator Kimbrell personally reviewed all of the material in question and

26  specified the potential threats to institutional safety and security if the requested documents are

27  produced.  (Kimbrell Decl. ¶¶ 4-21.)  Third, a protective order cannot be utilized in this case to

28  minimize any potential risks because Plaintiff is representing himself.  Finally, if these documents

6

1   are produced, the potential risks include physical harm, possibly even death, to other inmates or

2   CDCR staff members.  (Kimbrell Decl. ¶¶ 18-21.)

3       Because the evidence, presented under penalty of perjury, shows that there are no

4   substantiated findings of any relevant wrongdoing in Defendants' personnel files, and because

5   disclosure of documents from their personnel files would have numerous and significant adverse

6   implications that support the very rationale for the "official information privilege," the Court

7   should quash Plaintiff's subpoena.

8   **II.   ALTERNATIVELY, GOOD CAUSE EXISTS FOR ISSUANCE OF A PROTECTIVE ORDER.**

9       A party or person from whom discovery is sought may move for a protective order in the

10  court where the action is pending. Fed. R. Civ. P. 26(c)(1).  After a showing of good cause, the

11  court may issue any protective order "which justice requires to protect a party or person from

12  annoyance, embarrassment, oppression, or undue burden or expense," including any order

13  prohibiting the requested discovery altogether, limiting the scope of discovery, or fixing the terms

14  of disclosure. *Id.; Rivera v. Nibco*., 364 F.3d 1057, 1063 (9th Cir. 2004).  The Supreme Court has

15  interpreted this language as conferring broad discretion on the courts to determine when a

16  protective order is appropriate and what degree of protection is necessary. *Seattle Times Co. v.*

17  *Rhinehart*, 467 U.S. 20, 36 (1984).

18      For all of the reasons discussed above, if the Court does not quash the subpoena, then the

19  Court should grant a protective order.  Such a protective order should allow CDCR, at a

20  minimum, to redact all third party inmate and staff identifying information and withhold the most

21  sensitive documents that can reveal investigatory tactics, including Confidential Cs and

22  investigations conducted by Internal Affairs.

23  / / /

24  / / /

25  / / /

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH OR, IN THE
ALTERNATIVE, MOTION FOR PROTECTIVE ORDER (1:10-cv-02349 AWI-JLT (PC))

1

**CONCLUSION**

2     CDCR has clearly identified significant safety and security concerns exist if it is forced to

3 comply with Plaintiff's subpoena and produce the requested documents.  Additionally, CDCR's

4 compliance with the subpoena would infringe on third parties' privacy rights.  Given the fact that

5 there are no substantiated allegations of misconduct by any Defendant in any document, Plaintiff

6 cannot demonstrate a compelling reason for the production of these documents.  Consequently,

7 the Court should quash Plaintiff's subpoena.  Alternatively, and at a minimum, the Court should

8 grant a protective order allowing CDCR to redact all names and identifying information of third

9 parties and withhold the most sensitive documents from production.

10 Dated:  August 8, 2014                                    Respectfully submitted,

11                                                                         KAMALA D. HARRIS
                                                                            Attorney General of California
12                                                                         MONICA N. ANDERSON
                                                                            Supervising Deputy Attorney General
13

14
                                                                            */s/ Michelle L. Angus*
15                                                                         MICHELLE L. ANGUS
                                                                            Deputy Attorney General
16                                                                         *Attorneys for Nonparty*
                                                                            *California Department of Corrections and*
17                                                                         *Rehabilitation*

18 SA2013308723
     11424635.doc
19

20

21

22

23

24

25

26

27

28

8